United States v. UPS Customhouse number 2008-1409 Mr. Lino. Good morning, your honor. Okay, you have five minutes for rebuttal, correct? Yes, your honor. Okay, well you can start whenever you're ready. Thank you, your honor. May it please the court. This is an important case not only for UPS but for the entire customs brokerage industry. This case squarely presents the issue of what is the maximum penalty that the customs service, now Customs and Border Protection, can impose against a customs broker for failure to exercise responsible supervision and control over the customs business that it conducts. The statute in question is 19- Could we jump right to the interpretation of the regulation 111.1? Would that be okay with you? Yes, your honor, whatever you would like. Okay, so in particular the will consider language that you argue in your brief? Yes, your honor. Okay. What level of deference would you say I ought to be giving to the government based on their interpretation of their own regulation? What case would you have me follow and what is the standard that you would say I should apply? On the 111.1, those are the factors that Customs has explained in the regulation as to what they should consider, what they will consider. We all know what the regulation says. You've argued will consider means must consider or shall consider, and they've argued will consider means may consider, which allows them the latitude to not consider things. So we understand exactly both of your positions. I guess what we would like to know is what is the standard of deference that we give in particular to the government when they're espousing their own interpretation of their own regulation? Because that matters, right? If it's de novo, it's a very different world than if it's something much more deferential. Your honor, it turns on whether the government's interpretation of its own regulation reflects a well-reasoned, thorough analysis of the issue in question. Here we have a regulation that lists factors that Customs says it will consider on the question of responsible supervision and control. Now in their brief and in their litigation position, they are simply saying, well, we may consider those factors. So I would say that is not entitled to Chevron deference, because that is their litigation position in this case. They're simply saying, we don't have to consider all these factors. Our position is not that the court below should have found a deficiency in each one of those factors, but that all those factors needed to be considered and weighed and balanced. But the government's position on whether it must consider or will consider or may consider is not entitled to Chevron deference, and then the court must look at whether it's... But Chevron deference is irrelevant. That's statutory interpretation. This is regulatory interpretation. So we need to turn to the framework of, say, Seminole Rock, for example. So you're saying no deference whatsoever? I'm saying that in this particular case, their position interpreting that regulation is not entitled to deference, because it does not reflect a well-reasoned, thorough analysis of the issue. They're simply saying in their brief that we don't have to consider all these factors. It is not as if they had published something in the Federal Register that indicated... But are you familiar with Seminole Rock? I'm not, Your Honor. The government cites it for the articulation of the deferential standard they think needs to be given, and it's pretty much the Seminole Supreme Court case, and it's one which involves nothing but litigation position on the part of the government. So your argument, it seems to me, doesn't escape the exact situation of Seminole Rock, in which the Supreme Court articulated the standard of deference we give to the government in interpreting their own regulation is plainly inconsistent with the language of the statute. It's incredibly deferential. It's probably one of the most deferential standards that exists. And so that's why it matters. I understand what you're saying. It matters tremendously. And what also matters is this Court's opinion in Cathedral Candle, in which Judge Bryson wrote an extensive opinion about the deference issue. And in that analysis, one of the factors that Judge Bryson found persuasive and the panel found persuasive was whether or not the position that the government is asking for deference to is a litigation position or whether it's been well thought out and reflects thorough and complete analysis by the agency on the issue. There is no well thought out agency position on whether they have to consider all these factors. They simply argue below that they don't have to. So I'm sorry I'm not familiar with that particular case, but I did focus on this Court's decision in Cathedral Candle, where that was also explained quite extensively. Mr. Stahn, let me ask you. Were you finished answering Judge Hall's question? I am, Your Honor. Let me ask you. If one were to agree, assume for the moment one were to conclude the government is correct with respect to the issue of the tariff provision, and that the Court below the CIT correctly read that provision, but then one were to think, well, the Court erred with respect to 111. In other words, all of these factors have to be considered. Maybe more can be considered, but all of these have to be considered. Would the correct approach be to send it back to the CIT or to send it to the CIT with instructions to send it to customs to consider this issue? Your Honor, the correct approach would be to examine the record as to whether there was any evidence presented on those factors, and there wasn't. As we explained in the brief, the government did not present evidence on all these factors, so there's nothing to remand for. Well, there is some testimony in the record with respect to someone who said various things were considered, isn't there? There is a passing reference in one question. Well, did you look at the other factors? And she said yes, but she never explained how, why, what the analysis was. There was nothing put in the record for the CIT to examine as to how those factors should be considered. Consequently, Judge Carman in the CIT did not do any analysis of those factors. So there would be nothing to remand for. But if I may, I would like to address what we consider to be the most important issue in the case, which is the maximum penalty provision in the statute, because the issue here is very important not only for UPS, but for the entire customs and brokerage industry. Before you get to that, if we agree with you on the will consider language, if we ultimately say will consider does mean shall, and that whatever the standard of deference that we give in terms of our review of this regulatory interpretation issue, that we ultimately agree that you have surpassed it and succeeded, then we don't reach those other issues, correct? You would not have to reach that issue if you concluded there was no evidence to support an underlying violation at all, correct? No, not if we say there's no evidence to support an underlying violation. If we say that the government didn't properly consider all of the factors that they should have under 111, that doesn't mean there's no evidence of an underlying violation. It means that they have to go back and reconsider. I mean, there could very well be evidence. It's just not they didn't consider all the factors. They have to redo it. So if we send it back and tell them to redo this under 111, abiding by the language of their regulation, which you would have me construe as mandatory upon them, then we don't reach any of the other issues. Yes, I would agree with that, Your Honor. Well, the classification issue, we still have to reach. We still have to say whether parts and accessories involve a cathode ray tube or whether the machine is a cathode ray tube. Right. But apart from that. But focusing on the issue you're addressing, Your Honor, it almost sounds like the court would be saying we'd have to go to trial again. The government would get a second bite at the apple to present evidence they didn't present before. They shouldn't be allowed to take us to trial again when they had their opportunity to present their evidence on all those factors and they didn't. And if this court concludes those factors should have been considered, my point is there's nothing in the record that supports that they presented evidence on them. So there would be no reason to remand. There would be no reason to have another trial. And you would say it's, of course, the government's burden to present. Yes, Your Honor. But here's the thing. I suppose, you know, there are lots of cases where there are multifactors that must be considered. In MSPB jurisdiction we've got Douglas factors, the reasonableness of a penalty. And in many cases it's not the case that all of those factors are present in any individual case and nor is anybody obliged to necessarily produce the evidence, you know, to show every one of them is in fact present. Do you follow me? So why wouldn't this just be a matter of vacating and remanding for the court to make sure that all of the factors have been considered by the government and allowing the CIT to decide what ought to happen going forward? I mean, we're not going to tell them you must have a new trial. Well, but the government has not presented any indication in the record and in their brief that there's any evidence in the record of those factors. So my point again is simply that to remand back there would be nothing for Judge Carman to look at. The government isn't proffering any in their brief. They're saying we don't have to consider all these factors. I realize that. That's part of the problem for us is that we can't decide the way you want because we don't know what evidence really is in the record regarding maybe, I mean, I'm taking you at your word that it's not there, but that's not necessarily what the government has said and nor do we actually go back over the record and redo this the correct way, if we agree with you. Rather, in a situation like this, it seems that what would be appropriate, if we agreed with you, would be to vacate and remand and let the CIT sort out whether or not the government did or did not consider all of these factors. What's interesting about the factors, if you look at the factors, is they speak to training, instruction, having written instructions for your employees, making sure that there's a licensed customs broker available, those kinds of factors the government didn't present any evidence to the contrary on. For the government to get a second bite of the apple, I go back to that point, their position is we don't have to take a second bite. We don't have to present any evidence on it. If this court were to say, well, you do, they had their opportunity and they didn't, so there's a failure of proof. You say they had their opportunity when the matter was being decided at the agency level or when it was at the CIT? At the CIT because I tried the case and we made these arguments to Judge Carman and he concluded that they don't have to present evidence on them. He just said they can weigh whatever factors they want. They have complete discretion. They can basically just look at the totality of the circumstances. We briefed all that below in our post-trial brief. Then why isn't this a situation where there's an error in the lower court's application of the interpretation of a regulation as a matter of law and we send it back to that lower court to say you got the law wrong. You advised everybody incorrectly as to what the law was. Go back and reconsider how to move this case forward in light of the correct law. Well, again, we'd have to go through another trial because there's no evidence for the court to consider. And I would hope that this court would not have us do that in this situation because the overriding issue, as I go back to what I was mentioning earlier, is really the overall penalty here. And if I could just turn to that briefly before my time expires. I'll tell you what we'll do. You'll have time to do that, Mr. Lyman. Go ahead. I'll extend your rebuttal time. Thank you, Your Honor. You've had a lot of questions. Yeah. Well, we raised several issues. And I understand the court's focusing on some of them here. But the overriding issue for UPS and for the brokerage industry is what's the maximum penalty. We believe the statute's clear that the maximum penalty for a violation or violations is $30,000 in total. And Judge Carman ignored the phrase in total. The government ignores it in their brief. And this court should apply the plain wording of the statute and find that the maximum is $30,000. And there are several bases for doing that. If you look at, for example, the very next section in the statute, 1641, the court can see that the phrase in total for a violation or violations is not in the next section, the next subsection. If you look at subsection B6, it allows for penalties for each transaction. That's unlicensed activity. So Congress knew how to impose that limit when they wanted to. And in 1641 D2A, they said specifically $30,000 in total. And that's an important issue in the case. But even if the court thinks there's some ambiguity in that, the court should look at the regulation because the regulation is clear. That's 111.91. It's on page 6 of our brief. The regulation says that customs may assess a monetary penalty or penalties. So it says both penalty or penalties not to exceed an aggregate of $30,000 for one or more of the reasons in the section. So this is very clear. It talks about whether you look at it as a penalty or penalties. It's an aggregate of $30,000. And the government in their brief is actually arguing that this phrase, not to exceed an aggregate of $30,000, modifies penalty but not penalties. Mr. Lyman, if you look at a timeline, what would be your answer to the question when you had violations back in 98 and then you had a series of violations in 2000 with a break of a year and a half, roughly, in between. But they all were of the same location. And would you say that for all those violations, there's just one $30,000 penalty? Or does this time lapse in between create different circumstances? Well, here they only included the entries that were made from January to May 2000. So customs only looked at those penalties. Had they imposed penalties back in 98 for the same thing? If they imposed penalties in 98... Or were they then limited and they couldn't impose any more above $30,000 for the ones in 2000? No, Your Honor, because if they imposed penalties in 98 and then we paid the piper if we were reliable, and then we continued to commit the violation, then they could penalize us again. And that's in their mitigation guidelines where they make that clear. And that makes sense. If you're penalized and then you commit the violation again, you can be penalized again. But here the facts are that all the entries that they penalized us for in this case all occurred before the first pre-penalty notice. So it wasn't a case of violation, we're going to hit you with a penalty, and then you go and commit the same violation again and another penalty. These were all entries before January to May, 90 entries, and they hit us with multiple penalties exceeding the $30,000 limitation. And that's the problem in the case. And if there's any... You're saying that in the case for any notice, whether the notice involves one violation or 25 violations, the maximum is $30,000. If the violations are of the same type, yes, that is our position. And they all were of the same type here. The violation is not misclassifying a customs entry. It is failure to exercise responsible supervision and control. And if you look at... Why aren't you failing to exercise responsible supervision and control every single time you allow this to happen? Because the entries are simply a manifestation of the overall responsible supervision and control problem that they're focusing on. What customs said was, we trained you on this, we told you about this a while ago, you're continuing to make the same error, and that's a failure of your supervision in your operation. And the best example of that, Judge, would be to look at the actual penalty notices that we put in the appendix, because they all say the same thing. I've got them right here in front of me. They all say that, quote, here's on page 240 of the appendix. That's exactly the page I have open, too, so go ahead. The sentence there, that's when they hit us with five entries being one violation. And they said the five entries in this penalty are representative of the lack of attention UPS has paid to this misclassification issue. Next sentence says, this is lack of supervision and control. So by their own penalties, they are describing the entries as simply representative. No, no, it doesn't say this is lack of supervision and control. It says, blaming the problem on inexperienced personnel demonstrates a lack of proper supervision and control. It doesn't say the five cumulatively are a lack of supervision and control. You're getting a little wishful. Well, I'm sorry. They were responding to what we were explaining happened here, that there were some untrained employees. But their point was that the five entries are representative of the lack of attention UPS has paid. And so they're using the entries as just an example of the lack of supervision and control. That's why the violation is the lack of supervision and control. These entries are just the examples representative of that. Wouldn't any single instance of this be a justification for them to say you have a lack of supervision and control? No. Why not? Why not? When they say, they were going to say in the letter, customs has performed many hours of training with UPS and their personnel. There were two warning letters and numerous CF-29's notice of action sent. There have also been numerous telephone conversations with UPS. I mean, clearly they're frustrated with you. They've told you over and over and over again. And they've taken many efforts prior to sanctioning you to get you to curb your misclassification. So why wouldn't a single instance of misclassification constitute after all of that the lack of supervision and training? Well, Your Honor, if there's only one entry that they want to base the penalty on, I'm not denying that they could base a penalty on one entry and say that's indicative of the lack of supervision and control. Or they can say five entries are indicative of lack of supervision and control. But they are still limited by the statute in their own interpreting regulation that says, even if you impose penalty or penalties in the plural and it's violation or violations in the plural, their own regulation says aggregate of $30,000. So they can go after us for one if they want to. They have the discretion. I'm not denying that. But they are limited to $30,000 in the aggregate, whether it's one entry or multiple entries. Thank you. As I said, we'll restore your rebuttal to you. Because, again, you did have a fair number of questions. And we'll make sure, Ms. McCarthy, you have the same amount of time if you need it. Thank you, Your Honor. May it please the Court, to begin with the Customs Regulation 111.1, which is the definition of responsible supervision and control, because Congress did not define that in the statute. Judge Karman, reasonably and properly, chose to use a dictionary definition of will consider in the sense of having a capability of considering. If you don't mind, before we get into what you would, from a substantive standpoint, like us to do, can you answer the question that I peppered opposing counsel with initially? I assume you don't agree with his stance on cathedral candle, which I now have in front of me in my computer and have read. I assume that you're going to tell me that seminal rock deference of plainly erroneous or inconsistent with the regulation is the type of deference we ought to be giving. Is that right? Yes, Your Honor. In fact, Judge Karman, on page 837 of the appendix, he quoted cathedral candle and started out his analysis by saying, it is well settled that an agency's interpretation of its own regulation is entitled to broad deference from the courts. Now, in this case, we actually have a plain language definition, interpretation of the regulation. We don't even think it's that ambiguous to Just so I understand, all the circumstances of the interpretation, the interpretation arose in the context of this litigation? Yeah, well, there's no letter ruling or some sort of pronouncement somewhere. Yeah, well, and in fairness, the defendants, I'm not used to being the plaintiff, the defendants in this case have cited responses to internal advice memoranda, which they say Customs HQ ruling. Right. I'm trying to figure out what I need to do with that. Well, they are what they are. They are internal advice requests on their face. And under the customs regulations, they are published in the Federal Register. But they are what they are. They are, if the court reads them carefully, they're very case specific. They must be read in the context. In this case, we believe that the plain language of the regulation is by its terms, as we explain in our briefs, and as Judge Karman noted below, by its regulation, the regulation says, while determining what is necessary to perform and maintain responsible supervision and control will vary depending upon the circumstances in each instance. So this is a very fact specific definition here. The factors which CBP will consider include, but are not limited to in the following ten factors. If you substitute, if you're under substitute, will consider with must consider, then it's literally nonsensical. Because CBP is then required to consider factors which are explicitly not, which are not listed in the regulation. So there is an infinite number of factors that CBP would be bounding itself to consider. Wait, I don't understand that argument at all. It doesn't make sense to me. So you better explain it more clearly. Because they're saying that CBP must consider factors that include. Include is a subset. You must include these. But are not limited to. You must include a set of factors. But you're free to go beyond that if you think they're relevant to the case. Well, Your Honor, I think that they say there's a universe of factors that we're setting forth, and that inside that universe are unlisted factors. And if you interpret will consider as must, you must consider the entire universe of those factors, some of which are not listed. You must consider these, but you're not limited to these. Well, Your Honor, I will. You know, that's our position. But if Your Honor is, of course, free to disagree with us. In any event, we do not believe that these are mandatory, nor would it make sense for it to be mandatory. Because the responsibility of CBP provision and control, as the regulation says explicitly, depends upon the circumstances that are presented. Here we have a five-year period. It's pretty easy to say that a factor or several factors are not pertinent to this case and show that you've considered them at least. And I don't know how you get may out of will. Well, the court addressed a very similar issue in Carolina Tobacco. And there's deference where, depending on situations where appropriate, the factors will be considered that may be relevant. In this case, there's a very specific problem that Cosmos was dealing with. Over a five-year period beginning in 1995, they identified a problem. There was training. There were penalty CF-29s given out, formal warnings given out, notices given out. Over that five-year period, they could have issued penalties.  Instead, they chose a very measured approach to enforce compliance. And after the end of the five-year period, they had given, as Judge Carman found below, they were fully unnoticed that they were not exercising responsible supervision and control by allowing these misclassifications to happen. If the court does consider these factors mandatory, I have to take issue with Mr. Lyman's suggestion that the record isn't developed below. And this, of course, is a De Novo review. So what the court would be looking at would be not what customs, whether customs considered these. Because there's no issue here that the court lacked jurisdiction below because Customs had failed to exhaust its administrative remedies by not doing something procedurally correct. There's no question that the court entertained jurisdiction below. And so the court was conducting a judicial record and applying a De Novo review to what Customs did below. Now, I fully concede we did not bring this out ourselves because we did not believe the regulation required us to establish a consideration of all the factors. But Senior Supervisory Imports Specialist Lydia Goldsmith did testify at length on pages 624 through 626 of the transcript of the Joint Appendix, which contains the transcript. And Mr. Lyman, on cross-examination, asked her specifically, did you consider these factors? And she said in each case, she said yes. And he said, were they favorable to his client? And she said yes. And so the record establishes, except there's any confusion, that yes, Customs did consider each one of these factors below. And the factors were considered favorable to the client. Nonetheless, that did not offset, as Judge Carman found below, that UPS fell down on the job in terms of exercising- Why didn't the government allege this in their brief? Why? I mean, you took the position that the factors aren't relevant, but never once did you indicate to us that, and if you say they are mandatory, adequate evidence was presented that they were all considered. I'm sorry, Your Honor. I believe it is in our red brief. I don't have the exact page size. We did cite Ms. Goldsmith's testimony. We firmly believe, and we believe it would be very- Well, it would be formalistic, I guess. But not all the factors are covered in those questions. I believe he covered most of them. They weren't all covered, were they? I did not do a checklist, Your Honor, but he did go through- I can only get about six. So what do we do? What do we do then if we think will consider means must, and the evidence of record doesn't really answer the question, so that's a failure proof on the government's part that they actually can establish they were all considered. What do we do? Do we vacate and remand? Do we reverse outright? What do we do? First, I would urge the Court, and Your Honor, if there's on record six factors, I'd urge the Court to take a look at this transcript by Ms. Goldsmith. Assume that all the factors still weigh in favor, the other factors do weigh in favor. The question is, was Judge Carman reasonable to find that there was a preponderance of the evidence of responsible supervision and control, which is, for the reasons he set forth below, he made factual findings that UPS fell down on its job despite repeated warnings in terms of exercising- No, he made findings based on a potential misinterpretation of the regulation, which is what they're arguing. I mean, those findings, he didn't make findings. I didn't see anywhere, and perhaps this is the problem I'm having, I didn't see anywhere where he said that all of these factors were, in fact, considered. I mean, that would, in fact, be a fact-finding and something to which we would give deference. I mean, that's not in the record, right? No, no, he did not, because he relied, well, he relied, as we think he was perfectly appropriate to do, as we urged him to do, he relied upon the consideration of factors that are expressively preserved for him to consider in the regulation because they're not limited to, and he relied on those factors. Getting back, I think, to the question that Judge Moore had, what should the court do if it disagrees with Judge Carman's reading of the regulation and your reading of the regulation? I believe it would be harmless error because even if the court did not consider, even if the court, there is on record, the record establishes all these factors are in favor of UPS to the extent that there's testimony- But there's been no finding by that. There's been no finding, but it's under refuted testimony that customs did consider these and these factors- Are you saying that if we disagree with your reading of the regulation that we should then ourselves review the record and make a determination as to whether, in fact, all factors were considered? No, no. If you disagree with our reading of the regulation, I think you could take notice of the fact that there is evidence in the record and that Judge Carman was sitting in the courtroom and he heard the evidence of the other factors. And even assuming that, I would hope that the court wouldn't construe the regulation as to preclude Judge Carman from considering other factors, which are expressly- No, he can certainly assume we said the rate means that the agency must consider all that's listed and it may consider other factors. Would not the appropriate course be to remand it for further proceedings based upon that determination as to what the regulation says? If- I don't see how we can- I mean, putting aside your contention on the regulation, I don't see how we could, under any circumstance, go through the record and sort of step into the shoes of the CIT or the agency. We certainly wouldn't be asking the court to do that. If the court disagreed with me on everything I'm saying, yes, the appropriate result would be to remand back to Judge Carman for him to- Now, the other question is, is it a remand to Judge Carman or is it further remand to the agency to do it again? No, Your Honor, because, as explained before, there was never a motion to dismiss for lack of exhaustion of administrative remedies. No, no, I'm not talking about that. I'm not talking about that. I'm sorry. Judge Carman could send it back to the agency, though, if he wanted to, after we sent it back to him. Well, Your Honor, I'm sorry. The reason why he's getting to it, this is a de novo review, and so the agency's determination is not being subject to APA review or record review. There's no deference. There's no deference whatsoever. Yes, but the CIT sends things back to the agency often. In a record review case, Your Honor, it may, but this is a de novo review. It's not any different than in a 1592 case, in which the Court of International Trade would review a penalty determination de novo and would apply the complex machine works de novo, the complex machine works factors de novo, and review and come up with its own penalty de novo. So you're saying if we disagree with your reading, it should only go back to the Court of International Trade for further proceedings and then the court would fashion the proceedings as it saw appropriate after briefing from the parties. Exactly, and he may, you know, although I shudder to think about this, he could potentially take additional evidence on these factors, maybe complete the other three factors that Ms. Goldsmith, which Ms. Goldsmith did not testify, take factors and do his own analysis, and that has happened in 1592 cases. A national satellite conductor, for instance, was sent back to Judge Musgrave to do a complex machine works factors analysis. I would not urge that result here, but if that's what the court wanted to do, that would be the appropriate mechanism. Now, one of the arguments that your opposing counsel suggested was that it would not be appropriate for the government to get a do-over to introduce all new evidence. They had the burden of proof. They had their shot. They didn't introduce evidence of all of these factors. End of story. How do you respond to that? Well, first of all, we had our reasoned belief and, you know, we believe our interpretation of the regulation is correct and we weren't required to present the evidence of these factors. We still maintain that the evidence, that the explicit language preserves our ability to present evidence of other factors and the evidence of the other factors is so overwhelming and we have very strong factual findings in our favor on these other factors. You're not answering the question, though. You're going off on a... I'm sorry, Your Honor. You get a do-over, don't you, in the CIT if we send it back. Well, we sent back for a correct interpretation of the regulation. If the court interprets, disagrees with our interpretation of the regulation, we weren't at risk for misinterpreting for... Well, we don't believe we misinterpreted, but, you know, we didn't have any reason to believe we were required to present evidence of all these factors and we don't think there would be a do-over. We'd be receiving notice for the first time that our interpretation of the agencies on regulation was incorrect. You're saying if that happened, the legal landscape would have changed. Yes, significantly. And we also believe, in any event, it would be harmless. I still think it would be a harmless error because the evidence that's already in the record is overwhelming. Even considering all these factors in their favor, we still believe we'd establish responsible supervision and control by preponderance of the evidence. But if we're wrong, I don't think it would be a do-over. I think Judge Carman could go through and do an analysis de novo again. Because Judge Carman didn't have notice, but this was this court's view of the meaning of the regulation as well. If the court... No, you'll have the same... Mr. Lynham is going to have... My count is correct. He's going to have a total of nine additional minutes. He's going to have a total of nine additional minutes altogether. He's going to get five minutes on his rebuttal, and he's going to... He had an additional four he ran over, so he'll have had nine altogether beyond his 15. So from this point on, if you need it, you have nine minutes. Thank you very much, Your Honor. I would just like to address this issue of the $30,000 cap. It seems to be this classic situation of two ships passing, and at night, we read the Regulation 111.91, read the mitigation guidelines as counting and allowing and authorizing precisely what happened in these cases. None of the penalty notices that are issued here exceeded $30,000. Those penalty notices themselves included multiple penalties. So the distinction between the use of violation or violations in the plural or penalty or penalties in the plural is really beside the point because it's fully consistent with what the record shows below. You do have the word aggregate in there. It can't exceed an aggregate of $30,000, and that word must mean something. Yes, it means that per penalty notice... And it says penalty or penalties, doesn't it? But there are penalties within a penalty notice. The question is, what does meaning of penalties? In our view, a penalty, there are separate entries that receive for each entry, as Lydia Goldsmith testified, a trial. For each violation, there was a $1,000 penalty assessed in the beginning when they first started doing the penalty notices, and that gradually increased to $2,000 penalty per violation. Those violations were contained, there were multiple violations contained in a single penalty notice. The aggregate of the penalty notice cannot exceed $30,000. Why were these penalty notices broken down into four or five different notices when they all relate to the same thing and all were in a period before you issued this group of penalty notices? First of all, they were different sets of entries. They appear to be more coincidental in time because of a bureaucratic lack. They're all related to a time period, though. They're all within a relatively close... A week or two or three weeks, whatever. Because they're different entries, and as Lydia Goldsmith testified, after this five-year period of training notices... By the way, if customs had done what UPS is suggesting, UPS would be looking at $180,000 in penalties because they could have assessed $30,000 a year for six years. They took a more measured approach. If you look at the CF-29s in the Joint Appendix, they're increasingly ratcheting up the warnings with each one. They're saying, okay, this is in violation, but just stop doing it. Over time, there's a greater level of urgency saying, you are noticed, we're going to have to be taking further action. Phase two of this approach, the training, the warnings, phase two was penalty notices. The agency, at that point, failing penalty notices, they might have had to have gone to a much more draconian remedy of suspension or revocation of the license, which was always available to them as well. The penalties... UPS is a large broker. There's multiple ports of entry. There's no reason to suggest that they get to exercise... fail to exercise responsible supervision and control throughout all the ports in the country for a period of time. Let me ask you. This is not the facts of our case. Assume you have a situation where during the period between January 1 of a given year and June 30, the six-month period, Customs determines that there were 100 violations of the type we have here, the same classification or misclassification issue, and that it was the result of failure to exercise supervision and control. Is it your position that Customs could charge a $30,000 penalty for each one of those 100? Or that it... I think what Mr Lyman would say, he says you can charge us $30,000 for the whole bunch if you put them in one notice, but you can't charge more than that. Are you saying that you could charge $30,000 for each of those 100? I think it would be possible to do that. As a legal matter, you're saying as a matter of law, it would not be contrary to the statute to do that here. No, it would not. It would not be contrary to the statute, but it would have to be taken into consideration. I want to take issue a little bit with this. This is the exact same violation. First of all, there's an affirmative duty to exercise responsible supervision and control. It's not a failure. There's an affirmative obligation here. Under the Customs Modernization Act, brokers share responsibility with Customs for the enforcement of law. The purpose of the 111.1, which I never really got to, is to provide guidance to the brokerage community of what those things you might aspirationally look for. Just like in the legislative history to the Mott Act, they explain what an importer could use to exercise reasonable care. There's a disjunctive list of factors that an importer can use. We also regard it as a disjunctive list of factors that would help an importer meet its affirmative obligation for responsible supervision and control. But with regard to each entry, we're talking about different types of merchandise here. We're talking about maybe when the misclassification is made, it's done manually even though it's been taken off the computer tape. There's been a deliberate attempt to use a convenience classification despite the fact that Customs has made it very clear that it's improper to use it. It's not necessarily the same exact violation. I want to be clear. There's no question that this is occurring in a context, a larger context of the five-year history of the training and the warning. It does seem, though, that on the whole, that UPS had a record of being a good citizen as far as... They did run afoul on this issue. There's no question about that. But it does seem that they had on the whole a record of being a good citizen. That's a factor that you would say goes into the mix, the overall mix. To give you a hypothetical where Customs may run into problems on this, the target that UPS was told was to comply between... Customs was looking for between 89% and 94% compliance with this classification. If you had... Now, this is not the case. If you had an importer that was achieving 98% compliance, and then they go and one time isolate an instance where they misclassify an entry, and Customs slaps them for a $30,000 penalty, that might be inappropriate. Why? Because there's no really... The law would permit them to do that, wouldn't it? For responsible supervision and control, because the Customs is telling that if you're achieving these targets, this is the compliance they're looking for. You're saying one order like that, even though it was a misclassification, would not be reflective of an entity's failure to exercise control. Because Customs would be saying, Customs would be indicating, if you achieve this target, you're doing a good job, basically. Not to justify your misclassifications, you should avoid them, but that would be you're doing well. Here, they were given a target, and they weren't meeting it. As Judge Carmen found, it's a fact, I'm not clearly erroneous, they were fully unnoticed. They weren't achieving the expectations that Customs had placed on them of what Customs considers responsible supervision and control for this reclassification, which Customs had made very clear was a priority to the agency, because correct classification is important not only for revenue, but also for trade statistics. To have an over-classification of a part that is supposed to have a... It's supposed to have the CRT. CRT, that's what I was drawing a blank on, thank you. It's just sort of trade statistics. It's just depriving the United States of revenue. Customs had made it very clear that UPS, if you want to exercise responsible supervision and control in this context, this is what you have to do. As Judge Carmen found, I'm clearly erroneous, they fell down on the job. All right. I have one question. Was there a difference in duty on... I'm sorry, go ahead. Was there a difference in the duty? Yes. By the wrong classification. The convenience classification they used was duty-free. So it was not only... It was distortive of... It was not only duty-free, but it was also distortive of trade statistics, because... If it was properly classified. What was the duty? Was it also free? I think it depends on the circumstance. Just to be clear, we don't know exactly what these... The record below is not what the entries should have been classified as. It's that they did not contain a CRT. So we don't actually know what the proper classification... This was a variety of different merchandise. This is just a misclassification. Yeah. This is a variety of different merchandise. They're not one... It's not the same item every time. And we don't know... We frankly don't know what the correct classification is. Thank you, Ms. McCarthy. Thank you. Mr. Lyndon, you have five minutes for rebuttal. Thank you, Your Honor. I'd just like to address a couple of facts, real important facts, though, because there is no issue of duty here at all. The government argued at trial the correct classification was not 8473-3090, but 8473-3010 for not incorporating a cathode ray tube, printed circuit assemblies, or 3020, but they never maintained that there was any duty owed under correct classification. So that's not an issue in the case. And with regard to our compliance... They were both duty free. They're all duty free. And with regard to our compliance, the record shows that we improved our compliance to 80% in 1998 when the national average was 65%. So we were getting better. But be that as it may, we didn't get them all right. These are 90 entries out of 375,000 entries during the relevant period. And when the government said they didn't have notice, that they had to consider all the factors, I would respectfully disagree based on their own customs rulings. We put in our brief the two customs rulings that they've issued on this very point where they sent back penalty notices to field offices and said, you didn't present evidence on all these factors. So we can't even consider that. One thing we discussed with Ms. McCarthy was this question of what should happen if we agree with your reading of the, what we'll call by way of shorthand, the will regulation. She said it should go back to the CIT for further proceedings. Now, do you agree or disagree with that? I disagree, Your Honor. I think the court can look at the record that the government chose to present at trial and they argued that they just had to prove a totality of the circumstances approach, which is what Judge Carman found in his opinion, his post-trial opinion, said that customs totality of the circumstances approach is acceptable. He deferred to them on that and there would be Well, that's true. You've correctly recited, I think, what happened, but the fact of the matter is he was saying that in light, I think, correct me if I'm wrong, in light of his reading of the regulation. Now, he was saying, here's what the regulation means, so here's the deal. Whereas he would be now faced with a situation, no, the regulation means something else. Well, what's interesting is that we argued that the only factor the government even attempted to address was the reject rate because that's one of the factors in 111.1, the reject rate. And we pointed out that our reject rate, when you consider just these entries against the hundreds of thousands of entries we made, was less than two-one-hundredths of one percent based on what the government presented. And Judge Carman said that we were giving undue weight to this factor. So he actually considered that factor and then dismissed it. Well, it's always a little dicey, though, when, you know, a litigate, when district court or, I'm sorry, when court of international, when any lower tribunal proceedings are conducted with one legal backdrop, so to speak, a particular view of a regulation, and then the appellate court says, no, the regulation means something different. Isn't it safer to give both sides a chance to litigate the case under the correct regulation? Well, then I would say as a general matter, yes, but I would say based on what the government attorney actually pointed out was they had their witness understand who said, yes, we considered all the factors. So they had their chance there. If they wanted to develop more evidence on that and put that in the record, they could have. But I would add this in my... Well, of course, if it did get sent back, Judge Carman would be free to, after hearing from the parties, fashion what proceedings he felt were necessary. Well, yes, Your Honor. The parties could argue whether they thought another evidentiary session was needed. Well, I think Judge Carman would need a lot of guidance on what he is supposed to do on that, but I would point out that they had their witness understand, I asked whether she considered these other factors and she said, yes, without any explanation. The government never attempted to develop how they did consider them, what weight they gave to them. They gave nothing for Judge Carman to consider. So they had their chance and they had their witness saying that. So I would ask the Court not to give them another opportunity. But if the Court is inclined to, I would ask the Court to also, if they're going to remand, I would ask the Court to still address the maximum penalty issue because that issue will still come up if we have to go back down to the top. But it would all be dicta. I mean, everybody likes advice from an appellate tribunal. But we're not supposed to give it. But it wouldn't be dicta, Your Honor, because Judge Carman might still conclude that he has authority. He might. That's the very notion of advisory information. Well, but based on his opinion, he's already issued his ruling that the statute should be interpreted, the $30,000 should be interpreted whatever way customs says it should. In other words, he's indicated his inclination here is to just defer to customs, ignoring their own regulation, which says an aggregate of $30,000 for penalty or penalties. So he's already indicated what he's going to do. We're going to be right back in the same boat with a penalty exceeding $30,000, even if he considers all the factors. So he's made his view clear on that. All right. Well, thank you, Mr. Klein. Thank you. I think we'll have to bring this proceeding to the close. Thank you for your argument. Ms. McCarthy, thank you for your argument. The case is submitted.